# EXHIBIT 1

eFiled
2/12/2025 2:22:36 PM
Superior Court
of the District of Columbia

## IN THE SUPERIOR COURT OF WASHINGTON D.C.

**CHROMIUM, LLC**                                      )
**c/o Gross, Romanick, Dean & Desimone, P.C.**         )
**3975 University Drive, Suite 410**                   )
**Fairfax, VA 22030**                                  )
                                                       )
      **Plaintiff,**      )**PLAINTIFF REQUESTS SERVICE**
                                                       )**BY PRIVATE PROCESS SERVER**
**vs.**                                                )
                                                       )   **Case No.**  2025-CAB-000843
**SOULCYCLE M STREET, LLC**                            )
**Serve at:**                                          )
    **Corporation Service Company**  )
    **1090 Vermont Ave, NW**         )
    **Washington, DC 20005**         )
                                                       )
**And**                                                )
                                                       )
**SOULCYCLE LLC**                                      )
**Serve at:**                                          )
    **609 Greenwich Street**         )
    **New York, NY 10014**           )
                                                       )
      **Defendant.**        )

## COMPLAINT

COMES NOW Plaintiff Chromium, LLC ("Plaintiff" or "Judgment Creditor"), and for its

Complaint against Defendants SoulCycle M Street, LLC ("Debtor Company") and SoulCycle,

LLC ("Parent Company") states the following:

## PARTIES, VENUE AND JURISDICTION

1.    Plaintiff Chromium, LLC is a District of Columbia Limited Liability Company.

2.    Defendant SoulCycle M Street, LLC is a District of Columbia Limited Liability

Company and is named in this lawsuit solely to afford complete relief.

3.    Defendant SoulCycle, LLC is a Delaware Corporation with its principal place of

business located in the State of New York.

4.      On August 2, 2023, Judgment Creditor obtained a judgment against the Debtor Company in this Honorable Court (Case No. 2022-CAB-005091) (the "Judgment").  A copy of the Judgment is attached hereto as Exhibit "A".

5.      Parent Company is the sole member of the Debtor Company.

6.      As this lawsuit concerns the effect of Parent Company's actions in the creation, organization and use of the Debtor Company and the Parent Company has previously filed Sales and Use Tax Returns in its own name for the benefit of the Debtor Company, jurisdiction is appropriate in this Honorable Court pursuant to D.C. Code § 13-423(a)(1).

## FACTS

7.      The Judgment is based upon a breach of a lease agreement executed by Debtor Company for real property located 2301 M Street, NW, Washington, D.C (the "Premises").

8.      Debtor Company was organized solely for the purpose of executing the underlying lease in this matter and never executed any other contracts or conducted any business of any kind.

9.      For the entire term of the underlying Lease, the Debtor Company failed to establish and maintain a bank account for operations of any business, rather, all revenues generated by Debtor company were deposited directly into accounts belonging exclusively to the Parent Company.

10.      Ostensibly, the Debtor Company operated fitness classes at the Premises.  However, the Debtor Company never actually owned any of the equipment or inventory located at the Premises.  Rather, it was the Parent Company, that owned all of the equipment and inventory located at the Premises.

11.      Despite the fact that the Parent Company actually owned all of the equipment and inventory located at the Premises, it was the Debtor Company that filed Personal Property

Tax Statements indicating that the Debtor Company had purchased furniture, fixtures and equipment. A copy of the Personal Property Tax Statements are attached hereto as Exhibit "B".

12.     The Parent Company regularly sold merchandise branded with the Parent's Company's logo at the Premises.

13.     All employees who worked at the Premises (including reception staff, trainers and janitorial staff) were actually employed by the Parent Company, not the Debtor Company. The Debtor Company has never had any employees of any kind.

14.     The Parent Company is in the business of offering fitness classes to the general public.

15.     Moreover, during the Term of the Lease, the Parent Company advertised the Premises as a studio for the Parent Company. *See*, Website Printout attached hereto as Exhibit "C".

## COUNT I – SETTING ASIDE CORPORATE FORM

16.     Plaintiff restates and incorporates by reference herein the allegations set forth in the preceding paragraphs of this Complaint.

17.     A Limited Liability Company Agreement was executed for the Debtor Company by an entity named Soulcycle Holdings, LLC (a copy is attached hereto as Exhibit "D"). A Membership Certificate identifies SoulCycle, Inc. (now SoulCycle, LLC) as the sole member of the Debtor Company (a copy is attached hereto as Exhibit "E"). However, it appears that SoulCycle Holdings, LLC transferred its ownership interest in the Debtor Company to the Parent Company without any documentation of when or how this transfer

took place.  No other separate corporate/LLC formalities were maintained.  No separate entity operations, legal formalities, or records were maintained.

18.     The Debtor Company failed to maintain proper corporate/LLC formalities that would provide it with the protections of existing as a separate legal entity.  The Debtor Company was never capitalized.  Rather, the Debtor Company was created exclusively to execute a lease and then failed to conduct any business at the Premises or operate any actual business.  The Debtor Company entity served no function other than to be a signatory to the Lease. The Debtor Company did not even establish a bank account or keep any books and records for its operations as a separate entity.  The Debtor Company was merely as shell or conduit for the Parent Company

19.     There has been extensive comingling of the property of the Debtor Company and the Parent Company to such extent that all personal property was in control of solely the Parent Company and all property, tangible and intangible, inclusive of income, revenue, employees, and assets of the business operated at the Premises, were within the sole control and possession of the Parent Company and not the Debtor Company.  All revenue was diverted to the Parent Company.

20.     There is unity of ownership and control of both Debtor Company and the Parent Company.  The same individual that executed the underlying Lease in this matter on behalf of the Debtor Company executed the Limited Liability Company Agreement and was the Co-CEO of Parent Company until 2015.

21.     The registered office of the Debtor Company, as listed in the Limited Liability Company Agreement, is the same as the primary offices of the Parent Company.

22.    As evidenced by the terms of the underlying Lease, the Landlord was induced to lease the Premises for a period of 15 years.  Parent Company's failure to establishing a proper, fully capitalized, separate legal entity to operate at the Premises, renders Parent Company effectively, the operational *alter ego*, of the Debtor Company.

23.    Parent Company is therefore liable for the debts of the Debtor Company.

**WHEREFORE**, Plaintiff Chromium, LLC, respectfully requests that the Court enter a judgment in its favor and against SoulCycle, LLC on Count I in the amount of $690,146.06, plus pre- and post-judgment interest at the statutory rate per annum from August 2, 2023, plus court costs, and for such other and further relief as the Court deems just and proper.

Respectfully submitted,
**CHROMIUM, LLC**
By Counsel

A. Charles Dean, DC Bar #983256
GROSS, ROMANICK, DEAN & DESIMONE, P.C.
3975 University Drive, Suite 410
Fairfax, VA 22030
703-273-1400 (telephone)
703-385-9652 (facsimile)
adean@grddlaw.com



Superior Court of the District of Columbia
Civil Division - Civil Actions Branch
500 Indiana Ave NW, Room 5000, Washington DC 20001
202-879-1133 | www.dccourts.gov

First Class Mail
U. S. Postage Paid
Washington, D.C.
Permit No. 1726

Martin J Yeager
LAND CARROLL & BLAIR PC
524 King Street
ALEXANDRIA VA  22314

**Case Caption:**   CHROMIUM, LLC v. SOULCYCLE M STREET, LLC

**To:**   Martin J Yeager                              **Case Number:**   2022-CAB-005091

### JUDGMENT

This action came before this Court for a Non-Jury Trial before Associate Judge Heide L Herrmann. With proof being duly presented and the judge having rendered a decision it is on this the 2nd day of August, 2023,

**ORDERED** that judgment is entered in favor of Plaintiff, Chromium, LLC, and against Defendant, SoulCycle M Street, LLC, in the amount of $690,146.06, plus post-judgment interest at the statutory rate per annum, plus court costs.

**Clerk of the Superior Court**

### <u>Seeking Review or Appeal</u>

If a Magistrate Judge decides your matter, you have fourteen calendar days from the date that the judgment is entered to file a Motion for Judicial Review in your case. A party may not submit any new evidence with a Motion for Judicial Review. The Motion for Judicial Review of the Magistrate Judge's decision will be reviewed by an Associate Judge.

If an Associate Judge decides your matter or Motion for Judicial Review, you have thirty days from the date that the judgment or order is entered to file a Notice of Appeal with the Clerk of Superior Court's Office who will transmit the Notice of Appeal to the Court of Appeals.



**EXHIBIT**

A

**ACCESSIBILITY AND LANGUAGE ACCESS**

**Persons with Disabilities**:

If you have a disability as defined by the American Disabilities Act (ADA) and you require an accommodation, please call 202-879-1700 or email ADACoordinator@dcsc.gov . The D.C. Courts does not provide transportation service.

**Interpreting and Translation Services**:

The D.C. Courts offers free language access services to people having business with the court who are deaf or who are non-English speakers. Parties to a case may request free translations of court orders and other court documents. To ask for an interpreter or translation, please contact the Clerk's Office listed for your case. For more information, visit https://www.dccourts.gov/language-access.

**Servicios de interpretación y traducción**:

Los Tribunales del Distrito de Columbia ofrecen servicios gratuitos de acceso al idioma a las personas sordas o que no hablan inglés que tienen asuntos que atender en el tribunal. Las partes de un caso pueden solicitar traducciones gratuitas de las órdenes judiciales y otros documentos del tribunal. Para solicitar un intérprete o una traducción, póngase en contacto con la Secretaría de su caso.

Para más información, visite https://www.dccourts.gov/language-access.

El acceso al idioma es importante para los Tribunales del Distrito de Columbia. Puede dar su opinión sobre los servicios de idiomas visitando https://www.dccourts.gov/services/information-and-resources/interpreting-services#language-access.

**የቃልና የጽሑፍ ትርጓሜ አገልግሎቶች**:

የዲ.ሲ ፍርድ ቤቶች መስማት የተሳናቸውና የእንግሊዝኛ ቋንቋ ተናጋሪ ላልሆኑ በፍርድ ቤቱ ጉዳይ ላላቸው ሰዎች ነጻ የቋንቋ ተደራሽነት አገልግሎቶች ያቀርባል። ተከራካሪ ወገኖች የፍርድ ቤት ትእዛዞችና ሌሎች የፍርድ ቤት ሰነዶች በነጻ እንዲተረጎሙላቸው መጠየቅ ይችላሉ። የቃል ወይም የጽሑፍ ትርጓሜ ለመጠየቅ እባክዎን በመዝገብዎ የተዘረዘረውን የጽሕፈ ቢሮ (ክለርክ'ስ ኦፊስ) ያናግሩ። ለተጨማሪ መረጃ https://www.dccourts.gov/language-access ይጎብኙ።

የቋንቋ ተደራሽነት ለዲ.ሲ. ፍርድ ቤቶች አስፈላጊ ነው። የቋንቋ አገልግሎቶች በተመለከተ አስተያየትዎን https://www.dccourts.gov/services/information-and-resources/interpreting-services#language-access በመጎብኘት መስጠት ይችላሉ።

★ ★ ★ **Personal Property Tax**

Government of the    FP-31 Annual
District of Columbia

Amended ☐

Final Return ☐

| | |
|---|---|
| Name: | SOULCYCLE M STREET, LLC |
| Account ID: | 400001034133 |

| | |
|---|---|
| Filing Period: | 30-Jun-2023 |
| Due Date: | 01-Aug-2022 |
| Return Recieved | 01-Jul-2022 |

Is the remaining cost below $225,000 or less?    Yes

A. Type of business or profession    FITNESS CENTER

B. Number of District of Columbia locations    1

C. If a hotel or motel, enter the number of rooms    0

D. Are you a lessee or lessor of personal property not reported in Schedule A of this return?    No

E. Are there other companies doing business from your address under a lease, sublease or concession?    No

| | Original Cost | Remaining Cost |
|---|---|---|
| 1. Books, DVDs, and other reference material | $0.00 | $0.00 |
| 2. Furniture, fixtures, machinery, and equipment | $406,862.46 | $135,922.92 |
| 3. Unregistered motor vehicles, trailers, other tangibles | $0.00 | $0.00 |
| 4. Supplies | $1,812.26 | $1,812.26 |

| | Totals |
|---|---|
| 5. Total original cost of tangible personal property | $408,674.72 |
| 6. Remaining cost (current value) of personal property | $137,735.18 |
| 7. Deduct: Exclusion | $225,000.00 |
| 8. Taxable remaining cost (current value) of personal property | $0.00 |
| 8a. Tax rate | 3.40% |
| 9. Tax | $0.00 |

**EXHIBIT**

tabbies®    B

# ★ ★ ★ **Personal Property Tax**

Government of the    FP-31 Annual
District of Columbia

Amended    ☐

Final Return    ☐

| Name: | SOULCYCLE M STREET, LLC | Filing Period: | 30-Jun-2023 |
|---|---|---|---|
| | | Due Date: | 01-Aug-2022 |
| Account ID: | 400001034133 | Return Recieved | 01-Jul-2022 |

| | |
|---|---|
| 10. Tax paid with FP-129, request for extension of time to file | $0.00 |
| 11. If this is an amended return, payments made with original return | $0.00 |
| 12. If this is an amended return, refunds requested with original return | $0.00 |
| 13. Subtract Line 12 from the sum of Lines 10 and 11 | $0.00 |
| 14. Balance Due | $0.00 |
| 15. Overpayment | $0.00 |

SC000078

# ★ ★ ★ Personal Property Tax

Government of the   **FP-31 Annual**
District of Columbia

Amended ☐

Final Return ☒

| | | | |
|---|---|---|---|
| Name: | SOULCYCLE M STREET, LLC | Filing Period: | 30-Jun-2024 |
| | | Due Date: | 31-Jul-2023 |
| Account ID: | 400001034133 | Return Recieved | 27-Jul-2023 |

| | |
|---|---|
| Is the remaining cost below $225,000 or less? | Yes |
| A. Type of business or profession | OUT OF BUSINESS |
| B. Number of District of Columbia locations | 0 |
| C. If a hotel or motel, enter the number of rooms | 0 |
| D. Are you a lessee or lessor of personal property not reported in Schedule A of this return? | No |
| E. Are there other companies doing business from your address under a lease, sublease or concession? | No |

| | Original Cost | Remaining Cost |
|---|---|---|
| 1. Books, DVDs, and other reference material | $0.00 | $0.00 |
| 2. Furniture, fixtures, machinery, and equipment | $0.00 | $0.00 |
| 3. Unregistered motor vehicles, trailers, other tangibles | $0.00 | $0.00 |
| 4. Supplies | $0.00 | $0.00 |

| | Totals |
|---|---|
| 5. Total original cost of tangible personal property | $0.00 |
| 6. Remaining cost (current value) of personal property | $0.00 |
| 7. Deduct: Exclusion | $225,000.00 |
| 8. Taxable remaining cost (current value) of personal property | $0.00 |
| 8a. Tax rate | 3.40% |
| 9. Tax | $0.00 |

SC000079

# ★ ★ ★ Personal Property Tax

Government of the **FP-31 Annual**
District of Columbia

Amended ☐

Final Return ☒

| | | | |
|---|---|---|---|
| Name: | SOULCYCLE M STREET, LLC | Filing Period: | 30-Jun-2024 |
| | | Due Date: | 31-Jul-2023 |
| Account ID: | 400001034133 | Return Recieved | 27-Jul-2023 |

| | |
|---|---|
| 10. Tax paid with FP-129, request for extension of time to file | $0.00 |
| 11. If this is an amended return, payments made with original return | $0.00 |
| 12. If this is an amended return, refunds requested with original return | $0.00 |
| 13. Subtract Line 12 from the sum of Lines 10 and 11 | $0.00 |
| 14. Balance Due | $0.00 |
| 15. Overpayment | $0.00 |

SC000080



**EXHIBIT**



STUDIO NEWS   INSTRUCTORS   MAP

 news graphic

## Inside the #ItWasNeverADress Campaign

We're obsessed with #ItWasNeverADress, a brand-new project that was initially created for a Girls in Tech conference in Arizona. TANIA KATAN, an artist, activist and Creator of Code at Axosoft, came up with

**READ MORE**

news graphic

## Hear Our Hip Hop Playlist!

This SoulTunes Tuesday, we're letting the beat drop to hip hop! And in downtown NYC, we're kicking off HIP HOP RIDES every weekday this month led by instructors KAILI STEVENS, MADELEINE STARKEY, LILY

**READ MORE**

news graphic

## Soul Wrap-Up

From riding with Lady Gaga for Born This Way to celebrating our very happy 9th birthday, here's this week in SOUL... in case you missed it!

**READ MORE**

news graphic

## 9 Statements of Soul Gratitude

Today we're celebrating 9 years of SOUL! On our anniversary, we asked 9 of the earliest members of our Soul family to share why they're #SoulGrateful. Check out their answers and more photos of our

**READ MORE**

news graphic

## 17 Healthy Post-Soul Meals

Looking for some fast, easy meals to satisfy your post-SOUL hunger? 17 instructors revealed their essentials eats...

**READ MORE**

news graphic

## Listen to Our SOUL Favorites

Got a song that always reminds you of SoulCycle? Our instructors do! For our latest SoulTunes Tuesday playlist, they shared 50 tracks that never fail to make them think about tapping it back with the pack.

**READ MORE**

### UPCOMING CLASSES

| | | |
|---|---|---|
| KATHLEEN<br>SUN 05/03 1:45PM | rese |
| MEGAN<br>SUN 05/03 4:00PM | rese |
| KATHLEEN<br>SUN 05/03 5:00PM | rese |
| GARRETT<br>SUN 05/03 6:00PM | wait |
| MICHELLE<br>SUN 05/03 7:00PM | rese |
| ABBY<br>MON 05/04 6:00AM | rese |
| NATALIA<br>MON 05/04 7:00AM | rese |
| ALLIE<br>MON 05/04 8:30AM | rese |
| MEGAN<br>MON 05/04 9:45AM | rese |
| LISA<br>MON 05/04 10:45AM | rese |

**ALL WASHINGTON DC CLASSES**



## Soul Story: Libby Szymczak

A serious injury sidelined LIBBY SZYMCZAK from playing soccer for a year. As she recovered from surgery, she clipped in at SoulCycle and steadily regained the strength she needed to return to the field. Libby

**READ MORE**



## Soul Wrap-Up

From riding into Old Town to adding new SOUL to Hollywood, here's a look back at this week at SoulCycle... in case you missed it!

**READ MORE**



## What Instructors Drink After Soul

Thirsty for something post-SOUL? 30 instructors share the sips they swear by for energy and recovery...

**READ MORE**



## Go Behind the Scenes of our #OhAppyDay Video!

You've watched the video and by now you've tapped that app. But what went on behind the scenes of our #OhAppyDay shoot? Get the inside scoop on the cast, crew and everything they had to do to create

**READ MORE**



## Rejoice! The SoulCycle App is Here!

Get ready to tap, tap, tap... because we've just launched the SOULCYCLE APP!

**READ MORE**



## Soul Wrap-Up

Rejoicing for our new mobile app, swinging into Scottsdale, and showing our city pride: It was a week of celebrations at SOUL. Here's a recap... in case you missed it!

**READ MORE**

## Meet the Soul Rockstar: Miles Johnson

SoulCycle DC assistant manager MILES JOHNSON talks about his role at Soul, what he's learned, his greatest moment at work, and the mantra that inspires him.

READ MORE



## Soul Wrap-Up

From Arianna Huffington teaching us how to Thrive to style celebrating that music festival vibe, here's this week in SOUL... in case you missed it!

**READ MORE**



## Arianna Huffington Talks to SOUL!

SoulCycle Corporate just got a special visit from ARIANNA HUFFINGTON, chair, president, and editor-in-chief of the Huffington Post Media Group and author of fourteen books. Before Thrive with

**READ MORE**



## Soul Wrap-Up

Opening our brand-new Brooklyn Heights studio, riding with brides and shaking up Spring Break: We packed a lot into this week at SOUL. Here's a recap... in case you missed it!

**READ MORE**



## Soul Wrap-Up

Tapping it back with Google, popping up at SXSW in Austin and celebrating St. Patrick's Day in costume, it was a busy week in SOUL. Here's a recap... in case you missed it!

**READ MORE**



## Check Out Our SXSW Playlists!

This week we're popping up at SXSW and getting down to some incredible music! Instructors KYM PERFETTO, PIXIE ACIA, RACHEL WARREN and TRAMMELL LOGAN each curated an energizing playlist

**READ MORE**



## Soul Wrap-Up

From tapping it back for a cure to looking ahead to SoulCycle Chicago, here's this week at SOUL... in case you missed it!

**READ MORE**

## Meet Soul's SXSW Rockstars!

SoulCycle is popping up in SXSW this week! We're swinging into Austin and joining forces with Spotify plus some of our favorite DJs to bring you an epic music and movement experience. Instructors KYM

**READ MORE**

© 2015 SOULCYCLE    OUR STORY    FAQ    CAREERS    PRESS    GIFT CARD BALANCE    TERMS    CONTACT US    HOW DO I CHANGE MY REGIO

# LIMITED LIABILITY COMPANY AGREEMENT
## OF
## SOULCYCLE M STREET, LLC



This Limited Liability Company Agreement (this "Agreement") of SoulCycle M Street, LLC, a District of Columbia limited liability company (the "Company"), is made and entered into as of August 7, 2013, by SoulCycle Holdings, LLC, a Delaware limited liability company, as the sole member (the "Member") of the Company.

In order to form a limited liability company pursuant to and in accordance with the District of Columbia Limited Liability Company Act, DC Code Title 29 section 1001 et. seq. (the "Act"), the Member, by execution of this Agreement, hereby wishes to provide for the rights, obligations and interests of the Member relative to the Company and the terms and conditions on which the Company will conduct its business, and the Member declares the following to be the operating agreement of the Company:

Section 1.    **Formation.**

The Company has been organized as a District of Columbia limited liability company by the filing of Articles of Organization with the Department of Consumer & Regulatory Affairs District of Columbia Government on August 7, 2013 pursuant to the Act.

Section 2.    **Name.**

The name of the limited liability company is SoulCycle M Street, LLC, or such other name as may hereafter be determined by the Member.

Section 3.    **Principal Business Office.**

The principal business office of the Company shall be at such place as the Member may designate from time to time, which need not be in New York. The initial principal office of the Company shall be at 609 Greenwich Street, New York, New York 10014.

Section 4.    **Registered Office/Registered Agent.**

The registered agent of the Company shall be Vcorp Agent Services, Inc., with an address located at 1100 H Street, NW, Suite 840, Washington, DC 20005, and the registered mailing address of the Company in New York shall be 609 Greenwich Street, New York, New York 10014, or such other office (which need not be a place of business of the Company) as may hereafter be determined by the Member.

Section 5.    **Membership Certificates.**

The Company is hereby authorized to issue certificates representing the ownership of units in the Company (each, a "Unit") in accordance with the Act. Pursuant to District of Columbia Uniform Commercial Code Sec. 28:8-103, all Units in the Company shall be considered securities governed by Article 8 of the District of Columbia Uniform Commercial Code.

Section 6.    **Purposes.**

The purposes of the Company are to engage in any lawful act or activity and to exercise any powers permitted to limited liability companies organized under the laws of the District of Columbia or that are related or incidental to or necessary, convenient or advisable for the accomplishment of the above-mentioned purposes.

The existence of the Company as a separate legal entity shall continue until filing of the Company's Articles of Dissolution as provided in the Act.

Section 7.    **Powers.**

The Company, and the Member on behalf of the Company, shall have and exercise (i) all powers necessary, convenient or incidental to accomplish the purposes of the Company as set forth in <u>Section 6</u> above and (ii) all of the powers and rights conferred upon limited liability companies formed pursuant to the Act.

Section 8.    **Member.**

SoulCycle Holdings, LLC is hereby admitted as the sole member of the Company. The term "member" shall also include any person admitted as an additional member of the Company or a substitute member of the Company pursuant to the provisions of this Agreement, each in its capacity as a member of the Company. The Member shall have the power to exercise any and all rights and powers granted to members of a limited liability company pursuant to the Act and the express terms of this Agreement.

Section 9.    **Management.**

In accordance with the Act, management of the Company shall be vested exclusively in and exercised by, or under the authority of, the Member. The Member shall have the power to do any and all acts necessary, convenient or incidental to or for the furtherance of the purposes described herein, including all powers statutory or otherwise, possessed by members of a limited liability company under the Act.

Section 10.    **Approval of Certain Actions.**

The Member agrees that:

(a)    each of the Company and each of its subsidiaries shall be a "Restricted Subsidiary" and/or "Subsidiary" for purposes of all agreements governing existing and future indebtedness of Equinox Holdings, Inc., a Delaware corporation ("<u>Equinox</u>"), and its affiliates that incorporate those or similar concepts;

(b)    Equinox may cause each of the Company and each of its subsidiaries to guarantee, on a joint and several basis, any or all existing and future indebtedness of Equinox and its affiliates; and

(c)    Equinox may cause each of the Company and each of its subsidiaries to pledge any or all of its assets of any type or kind to secure payment of any or all of the existing

2

SC000102

and future indebtedness of Equinox and its affiliates or guarantees of any or all of Equinox's existing and future indebtedness.

(d)    For avoidance of doubt, the foregoing shall authorize and direct the Company and the officers of the Company and any such subsidiary are hereby authorized and directed to enter into and/or join into and to perform and to take such other actions as any officer of the Company executing the same deems necessary with respect to execution of the following documents:

(i)    the Indenture, dated as of January 28, 2010 (as amended through the date hereof), by and among Equinox, the guarantors party thereto, and U.S. Bank National Association, as trustee (the "Trustee"), governing Equinox's 9.50% Senior Secured Notes due 2016;

(ii)    the Second Lien Security Agreement, dated as of January 28, 2010, by and among Equinox, the guarantors party thereto and the Trustee, as collateral agent;

(iii)    the Credit Agreement, dated as of January 28, 2010, by and among Equinox and City National Bank (the "Lender");

(iv)    the General Continuing Guaranty, by and among Related Equinox Intermediate Holdings Corp., a Delaware corporation ("Related Equinox"), the guarantors party thereto and the Lender;

(v)    the Security Agreement, dated as of January 28, 2010, by and among Equinox, the guarantors party thereto and the Lender; and

(vi)    the Intercompany Subordination Agreement, dated as of January 28, 2010, by and among Equinox, Related Equinox, the guarantors party thereto and the Lender.

(e)    The Company and the officers of the Company are also authorized to make all such arrangements and to do and perform any and all acts as may be appropriate or necessary in order to implement fully the forgoing provisions of this Section 10, including, without limitation, execution and delivery of any and all papers, agreements, documents, instruments and certificates as may be appropriate or necessary, and the making of any such arrangements, the performance of any such acts and the execution, filing and/or delivery, as applicable, by such officers of any such papers, agreements, documents, instruments and certificates shall be conclusive evidence of such appropriateness or necessity.

Section 11.    **Officers.**

(a)    Officers. The Member may appoint officers of the Company from time to time. The Member initially appoints the following persons to the respective offices set forth opposite such person's name to serve until his or her successor is elected and qualified, or until his or her earlier resignation or removal.

Elizabeth Cutler        Co-Chief Executive Officer
Julie Rice            Co-Chief Executive Officer

3

SC000103

| Harvey Spevak | President |
| Scott Rosen | Executive Vice President and Chief Operating Officer |
| Larry Segall | Executive Vice President and Chief Financial Officer |
| Paul Tizik | Vice President Finance and Assistant Secretary |

(b)     Chief Executive Officers.  The Chief Executive Officers shall be responsible for the general and active management of the business of the Company and shall see that all orders and resolutions of the Member are carried into effect.  The Chief Executive Officers or any other officer authorized by each of the Chief Executive Officer or the Member shall execute all bonds, mortgages and other contracts, except:  (i) where required or permitted by law or this Agreement to be otherwise signed and executed or (ii) where such execution shall be expressly delegated by the Member to some other officer or agent of the Company.

(c)     Chief Operating Officer.  The Chief Operating Officer shall be responsible for managing the day to day operations of the Company and shall see to it that all orders of the Chief Executive Officers are carried into effect.

(d)     Chief Financial Officer.  The Chief Financial Officer shall have the custody of the Company funds and securities and shall keep full and accurate accounts of receipts and disbursements in books belonging to the Company and shall deposit all moneys and other valuable effects in the name and to the credit of the Company in such depositories as may be designated by the Member.  The Chief Financial Officer shall disburse the funds of the Company as may be ordered by the Member, taking proper vouchers for such disbursements, and shall render to the Chief Executive Officers and to the Member when the Member so requires, an account of all of the Chief Financial Officer's transactions and of the financial condition of the Company.

(e)     Secretary.  The Secretary and Assistant Secretary hall be responsible for filing legal documents and maintaining records for the Company and shall perform such other duties as may be prescribed by the Member or the Chief Executive Officers and the Chief Operating Officer, under whose supervision the Secretary shall serve.  Any Assistant Secretary shall assist the Secretary and exercise such powers and perform such duties as shall be determined from time to time by the Chief Executive Officers.

(f)     President and Vice President.  Any President or Vice President shall exercise such powers and perform such duties as shall be determined from time to time by the Member.

(g)     Officers as Agents.  The officers, to the extent of their powers set forth in this Agreement or otherwise vested in them by action of the Member not inconsistent with this Agreement or the Second Amended and Restated Limited liability Company Agreement of SoulCycle Holdings, LLC (as may be amended from time to time, the "Holdings LLC Agreement"), are agents of the Company for the purpose of the Company's business and, subject to Section 9, the actions of the officers taken in accordance with such powers shall bind the Company.

4

SC000104

(h)    <u>Employer Identification and Withholding</u>. The officers of the Company shall take all actions deemed necessary or advisable to secure federal and state employer identification numbers and to cause the Company to comply with all laws regulating payroll reporting, withholding and taxes.

(i)    <u>Books and Records; Expenses</u>. The officers of the Company shall procure the proper books, including a minute book, and books of account required by the statutes of the District of Columbia, or necessary or appropriate to the business of the Company, and shall also pay all charges and expenses incident to or arising out of the commencement of its business and to reimburse any person who has made any disbursements thereof. The Company's books and records shall be maintained at the principal office of the Company, except as otherwise required by the Member.

(j)    <u>Tax Returns</u>. The officers of the Company shall execute on behalf of the Company any and all tax returns, return extension requests, tax settlements and compromises and any and all tax forms, documents and instruments that relate to the tax affairs of the Company.

(k)    <u>Banking Resolutions</u>. The Company hereby adopts, and the officers of the Company shall execute, any standard form of resolution required by any banking institution relating to financial services provided by such banking institution to the Company; and each Chief Executive Officer is authorized to certify the adoption of any such resolution and is directed to record any resolutions so certified in the Company's minute book.

(l)    <u>Qualification to do Business</u>. For the purpose of authorizing the Company to do business in any state, territory or dependency of the United States or any foreign country in which it is necessary or expedient for the Company to transact business, the officers of the Company are authorized to appoint and substitute all necessary agents or attorneys for service of process, to designate and change the location of all necessary statutory offices, to obtain, make and file all necessary certificates, reports, licenses, permits, powers of attorney and other instruments, and to take any other action as may be required by the laws of such state, territory, dependency or country or as is otherwise necessary or expedient to authorize the Company to transact business therein, and whenever it is necessary or expedient for the Company to cease doing business therein and withdraw therefrom, to revoke any appointment of agent or attorney for service of process, to file such certificates, reports, revocations of appointment or surrenders of authority as may be necessary to terminate the authority of the Company to do business in any such jurisdiction, and to take any other action necessary or expedient to effectuate such cessation of business and withdrawal.

Section 12.    <u>**Limited Liability**</u>.

Except as otherwise expressly provided by the Act, the debts, obligations and liabilities of the Company, whether arising in contract, tort or otherwise, shall be the debts, obligations and liabilities solely of the Company, and the Member shall not be obligated personally for any such debt, obligation or liability of the Company solely by reason of being a member of the Company.

SC000105

Section 13.    **Capital Contributions.**

The Member has made an initial capital contribution of $1.00 to the Company in exchange for the issuance of one (1) Unit. All Units issued by the Company shall be certificated in a form approved by the Member and comply with Section 28. The Member shall not make additional or subsequent capital contributions.

Section 14.    **Allocation of Profits and Losses.**

The Company's profits and losses shall be allocated to the Member.

Section 15.    **Distributions.**

Distributions shall be made to the Member at the times and in the aggregate amounts determined by the Member. Notwithstanding any provision to the contrary contained in this Agreement, the Company shall not be required to make a distribution to the Member on account of its interest in the Company if such distribution would violate the Act or any other applicable law.

Section 16.    **Other Business.**

The Member and any affiliate of the Member may engage in or possess an interest in other business ventures of every kind and description, independently or with others. The Company shall not have any rights in or to such independent ventures or the income or profits therefrom by virtue of this Agreement.

Section 17.    **Exculpation and Indemnification.**

(a)    None of the Member, the organizer, the officers any authorized person or any of their respective officers, members, shareholders, partners, employees, representatives, agents or affiliates (collectively, the "Covered Persons") shall, to the fullest extent permitted by law, be liable to the Company or any other person that is a party to or is otherwise bound by this Agreement for any loss, damage or claim incurred by reason of any act or omission performed or omitted by such Covered Person in good faith on behalf of the Company and in a manner reasonably believed to be within the scope of the authority conferred on such Covered Person by this Agreement, except that a Covered Person shall be liable for any such loss, damage or claim incurred by reason of such Covered Person's gross negligence, willful misconduct or breach of the implied covenant of good faith and fair dealing created by the Act or under applicable law.

(b)    To the fullest extent permitted by applicable law, a Covered Person shall be entitled to indemnification from the Company for any loss, damage or claim incurred by such Covered Person by reason of any act or omission performed or omitted by such Covered Person in good faith on behalf of the Company and in a manner reasonably believed to be within the scope of the authority conferred on such Covered Person by this Agreement, except that no Covered Person shall be entitled to be indemnified in respect of any loss, damage or claim incurred by such Covered Person by reason of such Covered Person's gross negligence, willful misconduct breach of the implied covenant of good faith and fair dealing created by the Act or under applicable law, with respect to such acts or omissions; provided, however, that any

6

indemnity under this Section 17 by the Company shall be provided out of and to the extent of Company assets only, and the Member shall not have personal liability on account thereof.

(c)    To the fullest extent permitted by applicable law, expenses (including legal fees) incurred by a Covered Person defending any claim, demand, action, suit or proceeding shall, from time to time, be advanced by the Company prior to the final disposition of such claim, demand, action, suit or proceeding upon receipt by the Company of an undertaking by or on behalf of the Covered Person to repay such amount if it shall be determined that the Covered Person is not entitled to be indemnified as authorized in this Section 17.

(d)    A Covered Person shall be fully protected in relying in good faith upon the records of the Company and upon such information, opinions, reports or statements presented to the Company by any person as to matters the Covered Person reasonably believes are within such other person's professional or expert competence and who has been selected with reasonable care by or on behalf of the Company, including information, opinions, reports or statements as to the value and amount of the assets, liabilities, or any other facts pertinent to the existence and amount of assets from which distributions to the Member might properly be paid.

(e)    To the extent that, at law or in equity, a Covered Person has duties (including fiduciary duties) and liabilities relating thereto to the Company or to any other Covered Person, a Covered Person acting under this Agreement shall not be liable to the Company or to any other Covered Person for its good faith reliance on the provisions of this Agreement or any approval or authorization granted by the Company or any other Covered Person.  The provisions of this Agreement, to the extent that they restrict the duties and liabilities of a Covered Person otherwise existing at law or in equity, are agreed by the Member to replace such other duties and liabilities of such Covered Person.

(f)    If any Covered Person becomes involved in any capacity in any action, proceeding or investigation in connection with this Agreement or the Company's business or affairs, whether or not pending or threatened and whether or not any Covered Person is a party thereto, the Company will pay such reasonable legal and other expenses (including the cost of any investigation and preparation) incurred in connection therewith; provided, that, such Covered Person shall provide the Company with an undertaking to promptly repay to the Company the amount of any such reimbursed expenses paid to him, her or it to the extent that it shall ultimately be determined that such Covered Person is not entitled to be indemnified by the Company in connection with such action, proceeding or investigation.  If for any reason (other than by reason of the exclusions from indemnification hereinabove set forth) the foregoing indemnification is unavailable to such Covered Person, or insufficient to hold him harmless, then the Company shall contribute to the amount paid or payable by such Covered Person as a result of such loss, damage or claim in such proportion as is appropriate to reflect the relative benefits received by the Company on the one hand and by such Covered Person on the other hand or, if such allocation is not permitted by applicable law, to reflect not only the relative benefits referred to above but also any other relevant equitable considerations.

(g)    The foregoing provisions of this Section 17 shall survive any termination of this Agreement.

SC000107

Section 18.    **Assignments.**

The Member may assign, in whole or in part, its limited liability company interest in the Company (and related Unit).  If the Member transfers all of its interest in the Company pursuant to this Section 18, the transferee shall be admitted to the Company upon its execution of an instrument signifying its agreement to be bound by the terms and conditions of this Agreement.  Such admission shall be deemed effective immediately prior to the transfer, and, immediately following such admission, the transferor Member shall cease to be a member of the Company.

Section 19.    **Admission of Additional Members.**

One or more additional members may be admitted to the Company with the written consent of the Member.

Section 20.    **Dissolution.**

(a)    The Company shall dissolve, and its affairs shall be wound up, upon the first to occur of the following: (i) the written consent of the Member, (ii) the bankruptcy, dissolution or withdrawal of the Member, unless the Member simultaneously with such withdrawal transfers all of its limited liability company interests in the Company to another person or entity who agrees to assume thereafter all rights, obligations, and liabilities of the Member for all purposes under this Agreement, (iii) the sale of all or substantially all of the Company's assets or (iv) the entry of decree of judicial dissolution under the Act.

(b)    In the event of dissolution, the Company shall conduct only such activities as are necessary to wind up its affairs (including the sale of the assets of the Company in an orderly manner), and the assets of the Company shall be applied in the manner, and in the order of priority, set forth in the Act.

Section 21.    **Severability of Provisions.**

Each provision of this Agreement shall be considered severable and if for any reason any provision or provisions herein are determined to be invalid, unenforceable or illegal under any existing or future law, such invalidity, unenforceability or illegality shall not impair the operation of or affect those portions of this Agreement which are valid, enforceable and legal.

Section 22.    **Entire Agreement.**

This Agreement constitutes the entire agreement with respect to the subject matter hereof and supercedes all prior agreements with respect to the subject matter hereof.

Section 23.    **Binding Agreement.**

Notwithstanding any other provision of this Agreement, the Member agrees that this Agreement constitutes a legal, valid and binding agreement of the Member, and is enforceable against the Member in accordance with its terms.

SC000108

Section 24.    **Governing Law**.

This Agreement shall be governed exclusively by and construed under the internal laws of the District of Columbia (without regard to conflict of laws principles), all rights and remedies being governed by said laws.

Section 25.    **Amendments**.

This Agreement may not be modified, altered, supplemented or amended except pursuant to a written agreement executed by the Member.

Section 26.    **Fiscal Year**.  The fiscal year of the Company shall be the calendar year.

Section 27.    **Rules of Construction**.

Definitions in this Agreement apply equally to both the singular and plural forms of the defined terms.  The words "include" and "including" shall be deemed to be followed by the phrase "without limitation."  The terms "herein," "hereof" and "hereunder" and other words of similar import refer to this Agreement as a whole and not to any particular Section, paragraph or subdivision.  The Section titles appear as a matter of convenience only and shall not affect the interpretation of this Agreement.  All Section, paragraph, clause, or Schedule references not attributed to a particular document shall be references to such parts of this Agreement.

Section 28.    **Limited Liability Company Units**.

The Company hereby irrevocably elects that all Units issued by the Company shall be securities governed by Article 8 of the Uniform Commercial Code as in effect in the District of Columbia and each other applicable jurisdiction.  Each certificate evidencing a Unit or membership interests in the Company shall bear the following legend:  "THIS CERTIFICATE EVIDENCES AN INTEREST IN SOULCYCLE M STREET, LLC AND SHALL BE A SECURITY GOVERNED BY ARTICLE 8 OF THE UNIFORM COMMERCIAL CODE AS IN EFFECT IN THE DISTRICT OF COLUMBIA AND, TO THE EXTENT PERMITTED BY APPLICABLE LAW, EACH OTHER APPLICABLE JURISDICTION."  This provision shall not be amended, and any purported amendment to this provision, shall not take effect until all outstanding certificates have been surrendered for cancellation.

Section 29.    **Holdings LLC Agreement**.

The right of the Member or officers of the Company to take certain actions specified herein is subject to compliance with the Holdings LLC Agreement in all respects.

SC000109

IN WITNESS WHEREOF, the undersigned, intending to be legally bound hereby, has duly executed this Agreement as of the date first set forth above.

**MEMBER:**

SOULCYCLE HOLDINGS, LLC

By: _____

Name: Elizabeth Cotter

Title: CEO

SC000110



2      ORGANIZED UNDER THE LAWS OF THE DISTRICT OF COLUMBIA      *1*

## SOULCYCLE M STREET, LLC

## MEMBERSHIP CERTIFICATE

This Certifies that _____ SOULCYCLE INC. _____

is a member of the above named Limited Liability Company and is entitled to the full benefits and privileges of such membership, subject to the duties and obligations, as more fully set forth in the Limited Liability Company Operating Agreement.

In Witness Whereof, the Limited Liability Company has caused this Certificate to be executed by its duly authorized members this 15th day of May, 2015. and it's Limited Liability Company seal to be hereunto affixed.

Larry Segall, Executive Vice President

Paul Tizik, Assistant Secretary

© 1999 CORPEX BANKNOTE CO., BAY SHORE N.Y.

EXHIBIT
tabbies®

*FOR VALUE RECEIVED,*_____*hereby sells, assigns and transfers*

PLEASE INSERT SOCIAL SECURITY OR OTHER
    IDENTIFYING NUMBER OF ASSIGNEE

| |
|---|
| |

_____  _____

*unto*_____ *the Membership Interest represented by the within*

*Certificate, and does hereby irrevocably constitute and appoint*_____
*Attorney to transfer the said Membership Interest on the books of the within-named Limited Liability
Company with full power of substitution in the premises.*

*Dated,*_____
*In presence of*

_____  _____  _____
                                                            *(Member)*

_____  _____  _____
                                                            *(Member)*

THIS CERTIFICATE EVIDENCES AN INTEREST IN SOULCYCLE M
STREET, LLC AND SHALL BE A SECURITY GOVERNED BY ARTICLE
8 OF THE UNIFORM COMMERCIAL CODE AS IN EFFECT IN THE
DISTRICT OF COLUMBIA AND, TO THE EXTENT PERMITTED BY
APPLICABLE LAW, EACH OTHER APPLICABLE JURISDICTION.

SC000112